UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBIN D. DOWNING,

    Plaintiff,

    v.                           Case No. 3:23-CV-394-CCB

KUBOTA TRACTOR CORPORATION,

    Defendant.

## OPINION AND ORDER

On December 30, 2024, Plaintiff Robin D. Downing filed a complaint against

Kubota Tractor Corporation ("Kubota"), alleging wrongful death in her capacity as

administrator of the estate of decedent Forrest Blaker III and negligent infliction of

emotional distress in her personal capacity. (ECF 40). Kubota has moved to exclude the

opinions of Plaintiff's proposed expert Mr. Kevin Sevart, and has also moved for

summary judgment. (ECF 43; 45).

### BACKGROUND

On September 1, 2021, Mr. Forrest Blaker III was operating his Kubota M7060

Tractor and Loader ("Tractor"), when he was pinned under the front left tire of the

Tractor, killing him. (ECF 40 at 4, ¶ 14). Mr. Blaker had experience operating tractors

and bulldozers, and was living independently at 74 years old at the time of the accident.

(ECF 51 at 1). He had been using the Tractor to assist with tasks around his property in

Winamac, Indiana. On the morning of the accident, Mr. Blaker's daughter Plaintiff

Robin Downing saw Mr. Blaker at 9:00 a.m., but returned later in the afternoon to find the Tractor running and stuck in the dirt outside its storage shed, with Mr. Blaker underneath the left front tire. (ECF 51 at 1). Mr. Blaker had been dragged approximately 20 feet before the Tractor became stuck in mud. (ECF 51 at 1). Ms. Downing, who is a registered nurse, found that Mr. Blaker had no pulse. (*Id.*). Mr. Blaker's autopsy revealed that he had died of compressive injuries consistent with being run over and dragged by the Tractor. (*Id.*).

On April 10, 2023, Plaintiff filed suit against Kubota in state court. (ECF 5). The case was removed to federal court on May 20, 2023, and on December 30, 2024, Plaintiff filed an amended complaint alleging wrongful death on behalf of Mr. Blaker's estate and negligent infliction of emotional distress with regard to herself. (ECF 1; 40).

Plaintiff argues that Kubota employed a negligent tractor design that proximately caused Mr. Blaker's death. (ECF 40 at 5, ¶ 18). She alleges two defects, which each relate to a theory of how the accident occurred. First, Plaintiff alleges that the accident may have occurred while Mr. Blaker was standing next to the running Tractor, when the Tractor spontaneously shifted into the drive gear position. (ECF 51 at 11). Plaintiff alleges that an alternate design for the Tractor's shift lever could have prevented this. (*Id.*). Second, in the event that Mr. Blaker was crushed after falling from the Tractor while operating it, Plaintiff alleges that Kubota should have equipped the Tractor with an Operator Presence Control module ("OPC") that was designed to cut the Tractor engine when the operator left the seat. (*Id.* at 40, ¶¶ 12, 17). The Tractor that Mr. Blaker was using at the time of the accident did contain an OPC module, but it only

sounded an alarm when it detected an empty seat, rather than cutting the engine off completely. (ECF 53 at 5, ¶ 26). Other Kubota tractor models, such as the L4701 which Mr. Blaker previously owned, did utilize an engine-cutoff OPC. Plaintiff argues that Mr. Blaker's death would not have occurred if the Tractor had been equipped with an engine-cutoff OPC or an alternate shift lever design. (ECF 40 at 3–5, ¶¶ 12, 16–18). Kubota has moved to exclude portions of the testimony of Plaintiff's expert Mr. Kevin Sevart, and has also moved for summary judgment. (ECF 43; 45).

## ANALYSIS

### A. Motion to Exclude

In order to demonstrate her causal theories, Plaintiff has designated Mr. Kevin Sevart as an expert witness. Among other things, Mr. Sevart concludes: (1) that Kubota could have feasibly and inexpensively implemented an engine-cutoff OPC in the Tractor design; (2) that the presence of an engine-cutoff OPC would have stopped the engine when Mr. Blaker fell from the Tractor, shortening the tractor travel distance to 1–2 feet; and (3) that this reduced stopping distance would have prevented Mr. Blaker's death. (ECF 52 at 5–6).

Kubota has moved to exclude the portions of Mr. Sevart's testimony relating to his conclusions about the alternate OPC design's effect on the tractor's motion and Mr. Blaker's accident (ECF 43). Specifically, it objects to Mr. Sevart's conclusion about the Tractor's shortened 1–2 foot stopping distance with an engine-cutoff OPC as well as his final conclusion that "[Mr. Blaker] would not have been seriously injured" with a proper OPC design (ECF 44 at 4). Kubota makes these objections on several grounds.

First, it argues that Mr. Sevart is not qualified to offer any opinions on the cause of the accident itself. (ECF 44 at 12). Second, it argues that Mr. Sevart's analysis lacks a sufficient factual basis and utilizes an unreliable methodology under Rule 702. (*Id.* at 15).

Expert testimony is admissible at trial under Federal Rule of Evidence 702 if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and results from reliable scientific or other expert methods that are properly applied. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). Before admitting expert testimony, courts "must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal quotation omitted). In making this determination, courts often look to factors such as whether a theory has been subjected to peer review or accepted within the relevant expert community, whether there are standards controlling the technique's operation, and whether it has a potential error rate. *See Deputy v. Lehman Bros.*, 345 F.3d 494, 505 (7th Cir. 2003). However, "No one factor is dispositive . . . and 'the Supreme Court has repeatedly emphasized [that] the Rule 702 test is a flexible one.' " *Timm v. Goodyear Dunlop Tires North Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019) (alteration in original) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)). In addition, "the correct inquiry focuses not on 'the ultimate correctness of the expert's conclusions,' but rather on 'the soundness and care with which the expert arrived at her opinion.'" *Id.* (quoting *Schultz*

*v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). An expert's opinion "must consist of more than simply 'subjective belief or unsupported speculation.'" *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (citing *Daubert*, 509 U.S. at 589). The burden to establish the admissibility of an expert's testimony by a preponderance of the evidence falls on its proponent. *Varlen Corp. v. Liberty Mut. Ins.*, 924 F.3d 456, 459 (7th Cir. 2019).

### 1. Rule 702 Qualifications

Under Rule 702, an expert may be qualified to testify by "knowledge, skill, experience, training, or education." *Higgins v. Koch Dev. Corp.*, 997 F. Supp. 2d 924, 930 (S.D. Ind. 2014) (quoting Fed. R. Evid. 702). An expert is qualified if his "qualifications provide a foundation for [him] to answer a specific question." *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). In other words, courts determine whether an expert is qualified by evaluating each of the expert's conclusions individually, then assessing whether the expert has the "adequate education, skill, and training to reach them." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). An expert's specialization, or lack thereof, "typically goes to the weight to be placed on [her] opinion, not its admissibility." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016).

Mr. Sevart is certainly qualified to testify about the engineering and design of tractor components—he has spent almost thirty years working in that field, and has previously given expert trial testimony about tractor design. (ECF 53-1 at 4). However, Kubota argues that he is not qualified to testify regarding the causal elements of the accident because he does not possess an expertise in accident reconstruction and

biomechanics. (ECF 57 at 2). Plaintiff does not dispute that Mr. Sevart lacks expertise in biomechanics or accident reconstruction. (ECF 52 at 7). Rather, Plaintiff argues that Mr. Sevart is not testifying about accident reconstruction at all, but only about "engineering design and safety systems for tractors." (ECF 52 at 4, 7). But Mr. Sevart's testimony goes beyond opinions on engineering and design—he concludes that the precise set of physical conditions that led to Mr. Blaker's death would not have occurred if the Tractor had only moved 1–2 feet before stopping. (ECF 52 at 6).

Even if Mr. Sevart is correct about how an alternate OPC design would have affected the Tractor's behavior, he needs to explain how that behavior affected Mr. Blaker's body. Mr. Sevart is not qualified to testify on how an alternate OPC design could have affected Mr. Blaker's injuries.

2. **Rule 702 Methodology**

Kubota argues that Mr. Sevart's opinion lacks a sufficient factual and methodological basis with regard to his conclusion that if the Tractor had been equipped with an alternate proposed OPC design (1) the Tractor would have stopped within 1–2 feet after Mr. Blaker's fall, and (2) that this shorter stopping distance would have prevented Mr. Blaker's fatal injury.

a. **Tractor travel distance**

Mr. Sevart's opinion is based on an alternate proposed OPC design that would have cut power to the engine immediately upon Mr. Blaker's fall from the Tractor. Mr. Sevart demonstrates experience in tractor OPC designs, and his opinion that there are feasible OPC's that would perform an immediate engine cutoff appears to have a

sufficient factual basis (ECF 53-1 at 4–7, 144–823; ECF 48 at 69–74). But an immediate engine cutoff does not mean that the Tractor would have immediately ceased moving: Mr. Sevart himself acknowledges that the Tractor would continue to roll on its own momentum for some distance even after engine cutoff. (ECF 53 at 9–10, ¶ 54). Thus, Plaintiff must show that there is a sufficient factual basis for Mr. Sevart's opinion that *this* tractor, in *this* situation, would have continued to roll "1–2 feet" after engine cutoff. (ECF 51 at 3). *See Bezingue v. Steuben Lakes Reg'l. Waste Dist.*, 507 F. Supp. 3d 1021, 1030 (N.D. Ind. 2020) ("For an expert opinion to have a proper foundation, there must be a 'link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support.'" (quoting *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003))).

Plaintiff argues that this conclusion was formed in part through Mr. Sevart's reliance on Kubota's experts, including for variables such as the Tractor's speed at the time of engine cutoff (1.4–1.8 mph), and also for the time it would have taken for Mr. Blaker to fall from the Tractor (0.51 seconds). (ECF 52 at 13). However, to calculate how long the Tractor kept rolling, there are other important variables, such as the Tractor's mass, the elevation of the surface, and the degree of friction internal to the Tractor's components and between the tires and surface. (ECF 57 at 8). Mr. Sevart does not explain that he accounted for these variables, or how he reached his conclusions about the specific tractor in this case. Rather, he bases his conclusion on a series of tests that he performed in the 1990's and early 2000's on "similar tractors." (ECF 48 at 22, 37–40). But

Mr. Sevart does not provide the specific details of this testing, let alone details that evince a reliable methodology.

Moreover, though he asserts that those tractors were "similar," Mr. Sevart does not explain precisely how they are similar—i.e., how they share key characteristics with the Tractor in this case. (ECF 48; ECF 53-1; ECF 56 at 24–25, ¶ 109). Absent any of this data, a mere assertion is not enough to support Mr. Sevart's conclusion about the Tractor's hypothetical stopping distance. Mr. Sevart's opinion on the stopping distance of the Tractor lacks a sufficient factual and methodological basis under Rule 702, and is excluded *See CDW LLC v. NETech Corp.*, 906 F. Supp. 2d 815, 827 (S.D. Ind. 2012) ("When an expert's opinion fails to account for obvious 'salient explanatory variables,' it is too unreliable for admissibility under Rule 702" (citing *Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143–44 (7th Cir. 1998))).

### b. Injury causation

Even if he was qualified to testify on causation, *see* supra pt. A(1), Mr. Sevart's methodology regarding the cause of Mr. Blaker's injuries is insufficient. Plaintiff argues that Mr. Sevart's causation opinions incorporate and rely upon Kubota's own expert testimony, which includes experts who are qualified to testify about accident reconstruction and biomechanics. (ECF 52 at 9). But Mr. Sevart does not point to any data that explains how or why a shorter stopping distance of 1–2 feet would have prevented Mr. Blaker's injuries. He points to a statement from Kubota's expert that "Mr. Blaker died from chest compression caused by the tractor's front tire" and that "the tractor would have moved 1.3 feet" during Mr. Blaker's fall, but none of these data

points explain how a specific shorter stopping distance would have affected the sequence of events. (ECF 52 at 6). Kubota's own experts state that the initial contact would have been deadly even without an extended stopping distance. (ECF 58 at 11). Mr. Sevart does not provide any data or analysis to answer these questions. Thus, even if Mr. Sevart was qualified to testify on how an alternate OPC design could have affected Mr. Blaker's injuries, his conclusions are excluded under Rule 702's methodology prong. *See Van v. Ford Motor Co.*, 332 F.R.D. 249, 267 (N.D. Ill. 2019) ("Expert testimony should be excluded when 'there is simply too great an analytical gap between the data and the opinion proffered.'" (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))).

### B. Summary Judgment

Kubota has also moved for summary judgment, arguing that Plaintiff has failed to raise a genuine issue of material fact on either the OPC or shifter theory of causation and that her negligent infliction of emotional distress claim fails as a matter of law. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present

sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### 1. Alternate OPC Design Theory

In order to avoid summary judgment, Plaintiff must show that she has created a genuine issue of material fact as to whether Kubota's OPC design caused Mr. Blaker's injuries. *See Robin*, 200 F.3d at 1088. When a factual question is a complex and technical one which is "not within the ken of the ordinary person" then expert testimony is required to establish a genuine issue of material fact. *See ExxonMobil Oil Corp. v. Amex Const. Co.*, 702 F. Supp. 2d 942, 977 (N. D. Ill. 2010) (quoting *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995)). And in Indiana, when "the issue of proximate cause is not within the understanding of lay persons, testimony of an expert witness on the issue is necessary." *Porter v. Whitehall Lab'ys, Inc.*, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992) (quoting *Watson v. Med. Emergency Servs. Corp.*, 532 N.E.2d 1191, 1194 (Ind. Ct. App. 1989)), aff'd, 9 F.3d 607 (7th Cir. 1993). Here, the question of how an alternate OPC design would have affected the Tractor's motion in the real world, and whether that

motion change would have been enough to prevent Mr. Blaker's injuries in this case, is a complex and technical question of proximate cause.

But Plaintiff's sole designated expert on these matters, Mr. Sevart, is barred from testifying on them. *See supra* pt. A. Thus, Plaintiff has not created a genuine issue of material fact about whether Kubota's OPC design caused Mr. Blaker's injuries. *See Muller v. Synthes Corp*, No. 99-C-1492, 2002 WL 460827 (N.D. Ill. Mar. 26, 2002) ("Where the testimony of plaintiff's designated expert is excluded, plaintiff cannot raise a question of fact to avoid summary judgment"). Plaintiff must show more than the mere possibility that an alternate OPC design would have prevented Mr. Blaker's injuries. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well settled that speculation may not be used to manufacture a genuine issue of fact."). Plaintiff has not done so.

## 2. Alternate Shifter Design Theory

Plaintiff also proposes a causation theory based on the Tractor's shift lever design. Plaintiff, relying on the expert testimony of Mr. Sevart, argues that Kubota could have used an alternate shift lever design which better prevented the possibility of a spontaneous shift while Mr. Blaker was standing next to it. (ECF 40 at 4).

But this theory cannot make it past the summary judgment stage because Plaintiff has not created a genuine issue of material fact as to whether the Tractor shifted while Mr. Blaker was standing next to it. Plaintiff's only evidence for this causal theory is the witness testimony of Deputy Robert Hartley, the police officer who wrote the report following Mr. Blaker's death. Deputy Hartley concluded in his report that

Mr. Blaker must have inadvertently activated the Tractor's shift lever while standing next to it. (ECF 51 at 8).

However, Deputy Hartley did not witness any part of the accident or the events preceding it. The cause of Mr. Blaker's accident was not within his "personal knowledge" under Federal Rule of Evidence 602. Plaintiff has not asserted that Deputy Hartley possesses expert knowledge in accident reconstruction or other matters outside his personal knowledge. Thus, he is not eligible to testify on this matter. *See Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). Plaintiff has not put forward sufficient evidence to create a genuine question of fact regarding the shift lever theory of proximate cause.

### 3. NIED Claim

Plaintiff has also brought a Negligent Infliction of Emotional Distress ("NIED") claim, alleging that she suffered emotional trauma as a result of Kubota's negligence. (ECF 40 at 5–6, ¶¶ 19–23). Plaintiff and Kubota disagree on whether the Indiana Product Liability Act (IPLA), Ind. Code § 34-20 *et seq.*, subsumes all bystander NIED claims, and thus whether Plaintiff needs to allege a physical injury as required by the IPLA. Yet the Court need not reach this issue, because as discussed above, Plaintiff has not created a genuine issue of material fact as to whether Kubota was negligent. *See Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000). Thus, the claim is dismissed.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Exclude (ECF 43) and Motion for Summary Judgment. (ECF 45). Plaintiff's claims are dismissed without prejudice. Clerk is **DIRECTED** to close this case.

SO ORDERED on February 10, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT